IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVETTE VARGAS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 24 CV 2157 |
| | ) Judge Joan H. Lefkow |
| NORTHERN ILLINOIS FOOT & ANKLE SPECIALISTS, LTD., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Ivette Vargas brings this action against Northern Illinois Foot & Ankle Specialists, Ltd. ("NIFAS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.[1] Vargas alleges that NIFAS, her employer, subjected her to harassment based on her sexual orientation (Count I) and discrimination (Count II). She also claims that NIFAS retaliated against her for complaining about the treatment she received. (Count III). NIFAS moves for summary judgment on all counts. For the reasons stated below, the motion is granted.

**BACKGROUND**[2]

NIFAS operates full-service medical clinics throughout northern Illinois that offer inpatient, outpatient, and surgical care management for foot and ankle treatment. On January 16,

---

[1] The court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b).

[2] The court relies on the factual assertions and objections contained in the parties' Local Rule 56.1 submissions. N.D. Ill. L.R. 56.1. Properly supported material facts "are admitted unless the non-movant specifically controverts them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger* v. *City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (quotation omitted). Generally, a party's Local Rule 56.1 statement "must represent admissible evidence." *Judson Atkinson Candies, Inc.* v. *Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008). *But see Horton* v. *City of Chicago*, No. 13-CV-6865, 2018 WL 6505398, at *6 (N.D. Ill. Dec. 11, 2018) (concluding that an admitted Local Rule 56.1 fact constitutes a judicial admission and "withdraw[s] from contention the fact").

1

2023, NIFAS hired Vargas as a medical biller for its Crystal Lake office. Vargas is a female and identifies as lesbian. NIFAS terminated her on December 15, 2023.

Vargas shared a cubicle area where billing department employees could hear one another. On multiple occasions, Vargas's supervisor, Billing Manager Ellie Asali, brought Vargas into her office to tell her to lower her volume and disruption level in the office. (On June 13, 2023, Asali received a complaint from Chief Financial Officer Andy Geryol that he could not concentrate on his work because of the volume in the office. Asali provided Vargas with a verbal warning; she told Vargas to keep her volume down and to "be positive." (Dkt. 42 ¶ 24.) Asali had previously spoken with Vargas about her volume on at least three separate occasions. Asali documented the verbal warning in a note to Human Resources Director Janet Rosenbach, which was placed in Vargas's employment file.

Asali conducted another meeting with the billing department on August 7, 2023. During the meeting, Asali became aware that Geryol had again closed his door and appeared upset. Asali told the billing department, including Vargas, to be quieter and professional. Asali provided Vargas with another verbal warning.

On December 8, 2023, NIFAS held a celebration for an employee's last day of work. Asali called Vargas into her office and provided another verbal warning for her volume and for interrupting coworkers. Asali documented the verbal warning and spoke with Rosenbach about Vargas's behavior that day. Rosenbach later noted that Vargas packed her personal belongings from her cubicle and brought them to her car. Rosenbach observed that Vargas "was extremely loud and walked around throughout most of the morning," as opposed to working, and that Vargas "continued this behavior even after she was told by her Manager to get back to work."

(*Id.* ¶ 38.) Chief Operating Officer Tammy Timm also overheard Vargas make negative comments about Asali that day.

The same day, NIFAS held an exit interview for a different employee. The exit interview forms revealed negative sentiments within the billing department. Based on the feedback, Timm gathered the billing department for a "team huddle" on December 11. During the huddle, Timm asked whether anyone in the billing department had been mistreated. Vargas responded that she was being disrespected because Asali "all of a sudden stopped talking to me." (*Id.* ¶ 42.) Moreover, Vargas explained, Asali "called [her] a man," treated her differently, and constantly told her to "shut up." (Dkt. 31-2 at 19.) Vargas also stated that Asali "slapped me in the face." (Dkt. 42 ¶ 42.)

Timm then brought Asali and Vargas into a separate office. Timm asked Vargas if she reported the slap to anyone and Vargas replied, "No." (*Id.* ¶ 44.) Vargas later testified that she felt uncomfortable reporting her issues to HR.

The alleged incident occurred on September 6, 2023. Both Barbara Papen and Benedetta Calabrese, other billing team members, were present. In a later statement, provided on December 19, 2023, Papen explained that "during a morning meeting, [Asali] was talking and [Vargas] chimed in with a story of her own. [Asali] touched [Vargas's] cheek, which stopped [Vargas] from speaking and [Asali] continued with what she was saying. I didn't think much of it at the time, they joked around a lot." (*Id.* ¶ 48.) On December 12, 2023, Timm observed that she "knew this [incident was] probably unlikely and this negativity was coming from [Vargas]." (Dkt. 31-2 at 149.) Following its investigation, NIFAS determined that Asali did not slap Vargas.

On December 14, Calabrese approached Rosenbach and made a verbal complaint about Vargas's volume. Calabrese reported that she informed the billing team that Asali would be late

3

to work and, in response, Vargas stood from her cubicle, raised her voice, and expressed that Asali "should be sending this to everyone not just [Calabrese]." (*Id.* at 141.) Rosenbach instructed Asali to address Vargas's behavior and offered to provide assistance in the matter.

The next day, Rosenbach learned from Vargas that Asali appeared to be texting employees' personal cell phones, including Calabrese's, in violation of NIFAS's policy.[3] Rosenbach then suggested that she would speak to Asali "if that was going on" and reminded Vargas that she must follow the NIFAS cell phone policy. (*Id.* at 36; Dkt. 42 ¶ 51.) After their conversation, Asali observed Vargas taking a personal call without receiving approval or clocking out.

On December 15, 2023, Calabrese submitted a formal written complaint to Asali about Vargas's behavior. She wrote, in part:

> "Vargas as [*sic*] always been loud and very outspoken but was not disruptive or uncomfortable to me before, but lately this has changed. Due to the disciplinary warning, [*sic*] she received from you, she is very angry at this company and you especially. Many times, she speaks very open about that [*sic*] she has 'a lot' on Ellie and this company if she would get fired. … This department cannot get ahead with a person with this behavior. … Her hostile demeanor interrupts my workday, the bully attitude she presents in this workplace creates a difficult environment and concentration reflecting on the performance of this department, … I hope this can be resolved so we can have a happier environment."

(Dkt. 31-2 at 110.)

NIFAS terminated Vargas's employment that day. In a separate signed statement also dated December 15, 2023, Asali wrote that she "decided to terminate [Vargas's] employment

---

[3] The NIFAS Handbook provides, "In no event is a cell phone to be used by an employee during work hours. Use of cell phones on work time is permitted only for physicians and management or with their express permission. Use of cell phones … including text messaging or other applications, is restricted to employee break times. This will be closely monitored and failure to adhere to this policy may result in disciplinary action, up to and including termination." (Dkt. 31-2 at 191.)

4

because of her failure to follow NIFAS policy, her unprofessional behavior and making [*sic*] the workplace unhappy and uncomfortable for other coworkers." (*Id.* at 112.)

Asali held a meeting with Vargas to provide notice of her termination. Clinical Practice Manager Carol Schaffer also attended. Asali prepared an Employee Termination Form in connection with the meeting. Schaffer provided Vargas a copy during the meeting, which cited, as reasons for Vargas's termination, "Failure to follow procedure" and "Failure to follow code of conduct." (*Id.* at 114.) In the section titled, "Details of actions that warranted termination," Asali noted, "[Vargas] has been spoken to in the past about her behavior in the workplace. She continues to be rude, negative and unprofessional. Staff members have complained and state that they don't feel comfortable working with [Vargas]. She has been a distraction to other employee [*sic*]." (*Id.*) That day, Vargas filed a report with the Crystal Lake Police Department regarding Asali's alleged slap.

Vargas alleges various inappropriate comments made by Asali over the course of her employment. For instance, on October 1, 2023, Asali asked Vargas for her opinion about a shirt that Asali's daughter told her was inappropriate for work. Vargas replied that it looked fine, to which Asali replied, "I should have known better. I should have just waited to ask you because you're just like asking a man." (Dkt. 47 ¶ 5.) Asali also suggested Vargas "should maybe do your nails like this," and suggested that Vargas was "with the wrong person" in reference to Vargas's partner. (*Id.* at ¶ 6.)

On January 26, 2024, Vargas filed a Charge of Discrimination with the EEOC alleging harassment and discrimination based on her sexual orientation and retaliation. She asserts that Asali alone engaged in misconduct at NIFAS. NIFAS moves for summary judgment on all counts.

5

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The law considers a dispute genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lord* v. *Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and … draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba* v. *Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted).

The moving party "bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere* v. *Bd. of Trs. of S. Illinois Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (citation omitted). If the moving party meets that burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer* v. *Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (citation omitted).

**ANALYSIS**

**I.  Evidentiary Issues**

At the outset, NIFAS challenges three of Vargas's exhibits. A party may challenge evidence cited in support of or opposition to a fact on the grounds that it "cannot be presented in a form that would be admissible in evidence." Fed R. Civ. P. 56(c)(2). NIFAS argues that the court may not rely on the exhibits at summary judgment because they are inadmissible hearsay or lack authentication.[4] Hearsay is an out-of-court statement offered to prove the truth of the

---

[4] While NIFAS did not raise its evidentiary objections until their reply brief, the court may exclude evidence at summary judgment when their defects are facially obvious. *See TWD, LLC* v. *Grunt Style LLC*, No. 18 C 7695, 2023 WL 7092979, at *2 (N.D. Ill. Mar. 23, 2023) (denying reconsideration based on party's argument that it was not afforded adequate opportunity to respond to admissibility objections in reply brief).

matter asserted. Fed. R. Evid. 801(c). "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt* v. *Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (citations omitted). Admissible evidence must also be "authenticated by evidence sufficient to support a finding that the item is what the proponent claims it is." *United States* v. *Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) (quotation omitted). Nevertheless, "evidence does not need to be presented in admissible form at summary judgment" although it must be "admissible in content." *Smith* v. *City of Chicago*, No. 21-CV-1159, 2025 WL 1592261, at *3 (N.D. Ill. June 5, 2025) (quotation omitted) (quoting *Wheatley* v. *Factory Card & Party Outlet*, 826 F.3d 412, 421 (7th Cir. 2016)).

Exhibit A is a series of emails from December 15, 2023, to January 6, 2024, between Vargas and Rosenbach, with Timm and Asali copied. Vargas recounts the explanation she was provided for her termination, alleges various instances of harassment, and provides suggestions for management training. In reply, Rosenbach recounts her memory of the events immediately prior to Vargas's termination. Exhibit D is a chain of text messages between Vargas and Papen on March 8, 2024. Papen notifies Vargas that she was fired and explains that she wrote a letter stating "what she saw" with respect to the alleged slap. (Dkt. 41-4 at 4.) Exhibit H is a document titled "Separation Information" which contains descriptions of Vargas's termination, complaints, and warnings, and appears to have been completed by Rosenbach. (Dkt. 41-8 at 2.)

Vargas has failed to lay foundation establishing the admissibility of the exhibits. Exhibits A, D, and H are unauthenticated and would be inadmissible at trial in their present states. Nevertheless, it appears that each of these documents could be authenticated at trial via the testimonies of Vargas, Papen, and Rosenbach, respectively. Accordingly, Vargas's failure to authenticate the exhibits prior to summary judgment does not preclude the exhibits from being

considered as part of the record.[5] *See Montoya* v. *Mitchell*, No. 1:17-CV-01796, 2024 WL 1328799, at *3 (N.D. Ill. Mar. 28, 2024) (citation omitted) ("At the summary judgment phase, the Court may consider unauthenticated documents if it appears that they are capable of authentication at trial.").

But to be considered part of the record, Vargas's exhibits must also not constitute inadmissible hearsay. *See Boothe* v. *Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 793 (N.D. Ill. 2016) ("To be considered on summary judgment, evidence must either be non-hearsay pursuant to Federal Rule of Evidence 801, or must qualify for a hearsay exception pursuant to Federal Rule of Evidence 803.") (citation omitted). Here, Exhibit A is partially inadmissible as hearsay, and Exhibit D is entirely inadmissible as hearsay. In contrast, Exhibit H is nonhearsay and may be considered as part of the record.

Exhibit A is a chain of email correspondences between Rosenbach and Vargas that Vargas frequently relies upon for truth of the matter asserted. Vargas's correspondences in the email chain constitute hearsay for which no exception applies and may not be considered here. It is undisputed, however, that Rosenbach, NIFAS's Human Resources Director, was involved in decisionmaking regarding Vargas prior to Vargas's termination. Moreover, Rosenbach's oversight duties for NIFAS include "handling any and all employee issues that may arise, including hiring, firing, discipline, and compliance with NIFAS's policies." (Dkt. 31-2 at 118.) Accordingly, Rosenbach's correspondences within the email chain may be considered in the record as nonhearsay opposing party statements. *See Makowski* v. *SmithAmundsen LLC*, 662 F.3d 818, 823 (7th Cir. 2011) (holding Human Resource Director's statements "admissible as

---

[5] Questions of authentication can be more easily addressed when litigants provide sworn affidavits or sworn deposition testimony that clearly establishes the admissibility of evidence.

nonhearsay under Rule 801(d)(2)(D)" when Human Resource Director "was not involved in the … termination, [but] she was involved in the decisionmaking process leading up to the action").

Exhibit D is a text exchange between Vargas and Papen, a former billing employee of NIFAS. Vargas relies upon this exhibit as proof that Papen was asked to lie on behalf of NIFAS regarding the slap incident. Exhibit D thus constitutes inadmissible hearsay for which no hearsay exception applies and may not be considered part of the record.

Exhibit H appears to be a NIFAS employment document submitted by Rosenbach, NIFAS's Human Resources Director, to the Illinois Department of Employment Security.[6] Accordingly, Exhibit H, which states information pertaining to Vargas's termination and warnings, may be considered as part of the record as an opposing party statement. *See Makowski*, 662 F.3d at 823 (7th Cir. 2011); *see also Lupescu* v. *Napolitano*, 700 F. Supp. 2d 962, 968 (N.D. Ill. 2010) (citation omitted) ("[T]he statements contained in those reports are largely by TSA employees and agents and so, when offered by [plaintiff], are admissions of a party opponent, admissible as non-hearsay.").

Vargas does not only point to Exhibits A and H as admissions of a party opponent but also to establish a contradiction between the reasoning she claims she was provided and the explanation stated in her "Separation Information" form. As such, the statements are not hearsay and may be considered for this purpose. *See Woods*, 234 F.3d at 986 (concluding that documents could be considered at summary judgment because they were not offered for their truth).

## II. Harassment (Count I)

Vargas first brings a hostile work environment harassment claim under Title VII. To support such a claim, the plaintiff must present evidence that (1) she was subjected to

---

[6] Here, NIFAS does not dispute that Exhibit H includes "statements made by current and former NIFAS employees in responses provided to the Illinois Department of Employment Security." (Dkt. 46 at 5.)

9

unwelcome harassment, (2) the harassment was based on a protected characteristic, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile working environment, and (4) there is a basis for employer liability. *Ford* v. *Marion Cty. Sherriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019) (citation omitted). The court weighs several criteria: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hambrick* v. *Kijakazi*, 79 F.4th 835, 842–43 (7th Cir. 2023) (citation omitted). "Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason* v. *S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000) (citation omitted). The court considers generally whether the conduct became "so severe or pervasive that 'a reasonable person would find [it] hostile or abusive.'" *Hambrick*, 79 F.4th at 843 (citing *Harris* v. *Forklift Sys.*, 510 U.S. 17, 21 (1993)).

Vargas fails to raise a triable dispute of fact as to her harassment claim. Asali's inappropriate comments, such as telling Vargas that her wardrobe advice is "like asking a man," (Dkt. 47 ¶ 5), commenting on her fingernail length, or telling Vargas that she was "with the wrong person," (*id.* ¶ 6), are "indeed offensive, but … too isolated and sporadic to constitute severe or pervasive harassment." *Patt* v. *Fam. Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (citation omitted).

Vargas also fails to show that the other unprofessional behavior she experienced from Asali—such as any alleged slap,[7] being ignored, or told to "shut up," (Dkt. 31-2 at 19.)—was

---

[7] There is a suggestion, in an unauthenticated statement from Tammy Timm, that Vargas said to her that she had been slapped more than once. (Dkt. 41-7 at 2) ("[Vargas] then said on multiple occasions Ellie slapped me in the face … [I]t happened multiple times …"). Any second slap lacks any sort of factual detail, howeover, and Timm's statement is hearsay-within-hearsay.

"'based on membership in a protected class.'" *Hambrick*, 79 F.4th at 843–44 (quoting *Trahanas* v. *Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023)) (affirming summary judgment for defendant-employer). Vargas introduces no evidence suggesting that the behavior related to her sex or sexual orientation.[8] *Hernandez-Martinez* v. *Chipotle Mexican Grill, Inc.*, No. 11 C 4990, 2012 WL 2721913, at *4 (N.D. Ill. July 9, 2012) (citation omitted) (granting summary judgment to employer because, "even if [plaintiff's supervisor] was abusive," plaintiff had introduced "insufficient evidence" that the conduct was related to a protected characteristic).

Vargas otherwise relies on conclusional testimony that Asali ignored her and "treated her differently." (Dkt. 42 ¶ 69.) Such testimony is insufficient to survive summary judgment. *Hoosier* v. *Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 979–80 (N.D. Ill. 2014) (citation omitted) (holding that "two or three instances" of "harsh[] and … demeaning" treatment and otherwise "vague and conclusory" allegations are insufficient to survive summary judgment in a Title VII harassment claim); *Patton* v. *Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (affirming summary judgment for employer even though immediate supervisor "treated [plaintiff] in a rude, abrupt, and arrogant manner, ignored her work-related suggestions and failed to keep her informed about changes at work"). Asali and Vargas may have shared a difficult working relationship, but it is not actionable harassment under Title VII. Summary judgment in favor of NIFAS is therefore appropriate on Count I.[9]

---

[8] Vargas's other allegations in support of her harassment claim, such as unequal enforcement of the cell phone policy, are better suited for her discrimination claim. *See Nolan* v. *City of Chicago*, No. 15-CV-11645, 2017 WL 569154, at *5 (N.D. Ill. Feb. 13, 2017) ("A Title VII hostile environment claim is a discrimination claim based on the plaintiff's membership in a protected category, but in contrast to discrete acts of discrimination … is composed of a series of separate acts that collectively constitute one unlawful employment practice.") (citation omitted). To the extent Vargas asserts these incidents as the basis for her harassment claim, however, her theory fares no better. The record does not suggest any connection between the discipline and Vargas's sex or sexual orientation. *Hambrick*, 79 F.4th at 843.

[9] Because the court so concludes, it need not address NIFAS's *Faragher-Ellerth* affirmative defense. *Grigsby* v. *La Rabida Children's Hosp.*, No. 20 C 67, 2024 WL 3950121, at *17 n.8 (N.D. Ill. Aug. 27, 2024) ("As

### III. Discrimination (Count II)

Vargas next brings a Title VII claim for discrimination based on her sex and sexual orientation. She contends that NIFAS singled her out for discipline and looped her out of workplace communications. "Title VII prohibits employers from discriminating against employees on the basis of sex or gender." *Farrell* v. *Butler Univ.*, 421 F.3d 609, 612 (7th Cir. 2005) (citing 42 U.S.C. § 2000e-2(a)(1)); *see also Hively* v. *Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 351–52 (7th Cir. 2017) (holding that "a person who alleges that she experienced employment discrimination on the basis of her sexual orientation has put forth a case of sex discrimination for Title VII purposes").

Vargas relies on the *McDonnell Douglas* burden-shifting framework, 411 U.S. 792, 802 (1973), which is "one method of proving employment discrimination under Title VII." *Anderson* v. *Street*, 104 F.4th 646, 652 (7th Cir. 2024). Under that framework, Vargas first bears the burden of establishing a *prima facie* case by demonstrating: "(1) that she is a member of a protected class; (2) that she performed her job to her employer's expectations; (3) that she suffered an adverse employment action; and (4) that one or more similarly situated individuals outside her protected class received better treatment." *Id.* (citation omitted). If Vargas meets this initial burden, the burden shifts to NIFAS to provide a legitimate, non-discriminatory reason for its actions. *Farrell*, 421 F.3d at 613. Should NIFAS do so, the burden returns to Vargas to demonstrate that the stated reason was pretextual. *Id.*

Vargas's prima facie case fails because she does not identify any similarly situated individual outside her protected class treated more favorably. She offers two purported comparators: (1) other members of the billing department generally, and (2) Benedetta

---

the Court finds that Grigsby failed to produce enough evidence to defeat summary judgment, the Court need not address Defendants' *Faragher-Ellerth* affirmative-defense argument.").

Calabrese. Vargas's vague reliance on members of the Billing Department is insufficient as a matter of law, as she must "specifically identify an employee outside the protected class." *Scharaga* v. *Grossinger Autoplex, Inc.*, No. 13 C 7380, 2015 WL 3602393, at *3 (N.D. Ill. June 9, 2015); *Huang* v. *Cont'l Cas. Co.*, 754 F.3d 447, 451 (7th Cir. 2014) (citation omitted) (affirming summary judgment as to Title VII claim because plaintiff "needed to identify another employee[] outside of his protected class" and did not).

Vargas contends that Calabrese "was [her] coworker in the Billing Department, and as such, is similarly situated." (Dkt. 41 at 23.) This is also insufficient, as "nothing [has been] presented describing their experience, education or qualifications." *See Raymond* v. *Ameritech Corp.*, No. 03 C 4509, 2005 WL 525421, at *6 (N.D. Ill. Mar. 4, 2005) (granting summary judgment for failure to identify a similarly situated individual who received better treatment), *aff'd*, 442 F.3d 600 (7th Cir. 2006). But with that omission even set aside, Vargas also fails to identify any evidence suggesting that Calabrese was outside the protected class for her sex or sexual orientation discrimination claims. *Id.* (declining to consider comparable employee for Title VII race discrimination claim where "no evidence is presented of Gottshalk's race"). Summary judgment is therefore appropriate on Vargas's discrimination claim.

### IV. Retaliation (Count III)

Vargas also alleges that NIFAS terminated her in retaliation for reporting discrimination. "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) she engaged in an activity protected by the statute; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Anderson*, 104 F.4th at 654 (citation omitted). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that

inference, is insufficient" to constitute statutorily protected activity. *Tomanovich* v. *City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). It is undisputed that termination constitutes an adverse employment action. *See Harper* v. *C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

The parties primarily dispute whether Vargas engaged in statutorily protected activity. Vargas contends that her complaints regarding the alleged slap are protected but points to no evidence suggesting that the incident related to her sex or sexual orientation. *See Miller* v. *Chicago Transit Auth.*, 20 F.4th 1148, 1155–56 (7th Cir. 2021) (affirming summary judgment because complaints of being "'targeted' and treated unfairly" were insufficient to constitute statutorily protected activity); *Johnson* v. *Chicago Transit Auth.*, No. 14 C 9432, 2017 WL 1105446, at *7 (N.D. Ill. Mar. 24, 2017) (citation omitted) (finding that a complaint did not constitute a protected activity under Title VII where the complaint did not "indicat[e] a connection to a protected class or provid[e] facts sufficient to create that inference"), *aff'd*, 699 F. App'x 558 (7th Cir. 2017).

The record does reflect, however, that Vargas engaged in protected activity. Vargas reported, in the presence of Timm, that Asali asked Vargas whether a blouse was "appropriate for work" and then stated that asking for Vargas's opinion is "just like asking a man." (Dkt. 31-2 at 19–20.) A reasonable jury could conclude that Vargas complained of discrimination based on her sex or sexual orientation, which constitutes protected activity. *Walls* v. *Turano Baking Co.*, 221 F. Supp. 2d 924, 931 (N.D. Ill. 2002) (citation omitted) ("[I]nformal complaints to supervisors … constitute statutorily protected expression.").

But to raise a triable dispute of fact as to retaliation, Vargas must offer evidence that a retaliatory motive was a "but-for cause of the challenged employment action." *Gracia* v.

14

*SigmaTron International, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016) (quoting *University of Texas Southwestern Medical Center* v. *Nassar*, 570 U.S. 338, 352 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.

Vargas emphasizes that her termination occurred "just a few days" after her report of discriminatory conduct. (Dkt. 41 at 27.) Her claim fails, however, because she fails to "overcome the general rule that suspicious timing alone is insufficient to support a claim of retaliation." *Leitgen* v. *Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) (affirming summary judgment even though alleged retaliation occurred "just days" after engaging in protected activity). The Seventh Circuit has "cautioned … that suspicious timing may be just that—suspicious, and [has] underscored the importance of context in assessing whether an inference of causality is warranted or not." *Davis* v. *Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (quotation omitted).

Unfortunately for Vargas, "[t]he context here does not justify such an inference." *Id.* Vargas introduces no evidence suggesting that her complaint caused her termination. Indeed, the undisputed record establishes the contrary. Vargas does not dispute that, starting as early as June 2023, six months before her termination, Vargas received at least five warnings for her workplace disruption. In other words, "[t]he undisputed evidence … establishes that [the employer] had been dissatisfied with [the employee's] interpersonal flaws for a long time …." *Leitgen*, 630 F.3d at 676.

NIFAS also received complaints about Vargas's behavior on multiple occasions within a week of her termination. Vargas received a verbal warning for her volume and for disrupting coworkers on December 8, three days prior to her protected complaint. Calabrese verbally

15

complained about Vargas's volume on December 14. That day, Asali observed Vargas taking a personal call in violation of NIFAS policy after having been counseled about it the day before.

The next day, Calabrese submitted a written statement expressing additional concern about Vargas's behavior. (Dkt. 31-2 at 110.) ("Her hostile demeanor interrupts my workday, the bully attitude she presents in this workplace creates a difficult environment and concentration [*sic*] reflecting on the performance of this department, which also influences new people to this workplace."). NIFAS terminated Vargas that day. "In light of these significant intervening events, a jury could not reasonably accept [the plaintiff's] suspicious-timing argument." *Young-Gibson* v. *Bd. of Educ. of City of Chicago*, 558 F. App'x 694, 699–700 (7th Cir. 2014).[10]

Lastly, Vargas contends that NIFAS cited contradictory reasons for her termination, indicating "a messy pretext." (Dkt. 41 at 21.) Pretext may serve as circumstantial evidence of an employer's retaliatory action. *Crain* v. *McDonough*, 63 F.4th 585, 593 (7th Cir. 2023). However, pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton* v. *Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (citation omitted).

Vargas argues, based on her deposition and an email to Rosenbach, that NIFAS cited reasons wholly distinct from those outlined in her termination paperwork: deleted patient records and "a fabricated allegation that [Vargas] was dancing in her cubicle" as reasons for her termination. (Dkt. 41 at 21.) Vargas asserts that her "termination paperwork," which appears to be a NIFAS form entitled "Separation Information," identified other reasons: "that [Vargas] violated the cell phone policy" and her poor attitude. *Id.* (citing Dkt. 41-8 at 3.)

---

[10] Similarly unpersuasive is Vargas's contention that NIFAS's decision to replace her with a man suggests a discriminatory motive. *Cianci* v. *Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) (citation omitted) ("[R]eplacement by a male … is simply insufficient to demonstrate that … gender motivated the decision to terminate [plaintiff].").

16

Vargas misreads the "Separation Information" document, as she only references the "Final Incident" leading to her termination. (Dkt. 41-8 at 3.) The deleted patient records are expressly identified as a "prior incident," as are multiple warnings related to her disruptive behavior. (*Id.* at 3–6.) ("[HIPAA] Violation-Deleted Doctor's notes on 5 different patients."; "Verbal Warning from Manager to get back to work and stop interrupting coworkers.").

That "Final Incident" is also consistent with the explanation provided by both Asali and NIFAS. Asali noted, as reasons for Vargas's termination, an unapproved personal phone call, "failure to follow NIFAS policy, her unprofessional behavior[,] and making the workplace unhappy and uncomfortable for other coworkers." (Dkt. 31-2 at 93–94, 114.)[11] Vargas's Separation Information form likewise cited "Failure to follow company policy/procedures" and "Failure to follow code of conduct." (Dkt. 41-8 at 3.) The record does not suggest a "phony reason" for her termination. *Burton*, 851 F.3d at 698 (citation omitted). Absent additional evidence suggesting a causal connection between Vargas's informal complaint and her termination, no reasonable jury could find in her favor. The court therefore grants summary judgment in favor of NIFAS as to Count III.

---

[11] In support of her discrimination claim, Vargas asserts that Asali permitted such calls and that the cell phone policy was "never enforced." (Dkt. 41 at 11; Dkt. 41-2 at 9.) Even if this assertion were intended to support her retaliation claim, NIFAS would remain entitled to summary judgment. "[W]here courts have found selective enforcement can be evidence of pretext, they have also found other evidence supporting pretext to the employee's termination and viewed that evidence together." *See Fountain* v. *Zimmer Inc.*, No. 3:17-CV-323 JD, 2021 WL 2125287, at *12 (N.D. Ind. May 25, 2021) (collecting cases). Vargas points to no additional evidence of pretext. Indeed, in June 2023, NIFAS terminated a non-lesbian employee in the billing department for her "disrespect and negative attitude" and "excessive cell phone use." (Dkt. 42 ¶ 68.)

## **CONCLUSION AND ORDER**

For the foregoing reasons, NIFAS's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of NIFAS on all counts. Civil case terminated.

Date: September 16, 2025

_____
U.S. District Judge Joan H. Lefkow